UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONELY DESHON CHAMBERS,

               Plaintiff,               Case No. 1:11-cv-24

v.                                          Honorable Robert J. Jonker

STATE OF MICHIGAN et al.,

               Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim and/or on grounds of immunity against Defendants State of Michigan, Michigan Department of Health Care Services, Michigan Department of Corrections, Michigan State Police, Dutcher, Stewart, Palmer, Zarotney, Cox, Straub and Sharp. The Court will serve the complaint against Defendants Thomsen, Cassel, Jones, and Baker.

## Discussion

I. Factual allegations

Plaintiff Ronely Deshon Chambers presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Michigan Reformatory (RMI). He sues the State of Michigan, the MDOC, the MDOC Bureau of Health Care Services, MDOC Deputy Director Dennis M. Straub, the Michigan State Police (MSP), MSP Inspector Greg Zarotney, Michigan Attorney General Mike Cox, and the following RMI employees: Doctor David L. Sharp; Captain T. Thomsen; Lieutenant D. Cassel; Corrections Officers T. Jones and T. Baker and an unknown corrections officer; Hearing Investigator J. Dutcher; Assistant Deputy Warden Anthony H. Stewart; and Warden Carmen Palmer.

According to the complaint, Plaintiff experienced a serious back injury in 2001. Since that time, Plaintiff has received numerous special medical accommodations: pain medication three times daily; no repetitive bending; no lifting over ten pounds; light-duty work assignment; a walking cane; a hot water bottle; a urinal; bottom-bunk assignment; a ground-floor cell assignment; elevator access; placement near the dining hall; and early meals due to his cane detail. In July 2010, Plaintiff was erroneously assigned to work on a yard crew. Because of his medical condition, Plaintiff promptly was removed from the job assignment.

On August 12, 2010, one of the yard officers called Health Services to report that he had seen Plaintiff playing basketball. Plaintiff was called to Health Services on August 16. Defendant Dr. Sharp told Plaintiff that his cane was being confiscated because he had been observed playing basketball. Plaintiff told Defendant Sharp that he was undergoing severe back pain and that he could barely move. He asked Dr. Sharp to review his medical file, which would support the

seriousness of Plaintiff's medical condition. Defendant Sharp told Plaintiff that custody had told him to confiscate the walking cane, "and that's that." (Compl., Page ID#8.) Plaintiff continued to contest the confiscation. Defendant Officer Pope left and returned with a wheelchair. He told Plaintiff to calm down and said that he would take Plaintiff over to the control center to talk to the shift commander. Pope pushed Plaintiff's wheelchair to the control center.

When Plaintiff reached the control center, he attempted to explain his medical condition and his need for a cane. Defendant Captain Thomsen told Plaintiff, "Get the f*** out that chair and go lock the f*** up now." (Compl., Page ID#9.) When Plaintiff continued to explain, Thomsen repeated that he had given Plaintiff a direct order to "go lock the f*** up now." (*Id.*) Plaintiff told Defendant Thomsen that he was in serious pain and could not walk all the way back to his cell block. Thomsen then nodded at Defendant Jones, who knocked Plaintiff out of his wheelchair and onto the floor. Defendant Baker and the unidentified corrections officer slammed Plaintiff into the control room counter while Defendant Jones placed handcuffs on Plaintiff's wrists. Defendants Thomsen and Cassel allegedly stood on the other side of the control-room counter, laughing. Defendant Jones and the unidentified officer picked Plaintiff up off the floor, and Defendant Jones placed Plaintiff in a choke hold. Still laughing, Cassel stated, "Pressure points work[] wonders." (*Id.*, Page ID#10.) Defendant Jones pushed Plaintiff's nose into his head and then threw him again to the floor. Defendants Jones, Baker and the unidentified officer then carried Plaintiff to segregation. Plaintiff was thrown to the floor of the segregation shower cell, kicked in the buttocks, and left in handcuffs, face-down on the floor, for three hours.

Plaintiff alleges that Defendant Thomsen filed a major misconduct ticket for disobeying a direct order. Plaintiff admits that he heard the order. Despite the admission, Plaintiff

contends that the misconduct was fabricated, apparently because Plaintiff was physically unable to obey. Defendant Dutcher investigated the grievance that same day. Plaintiff requested a full investigation, including the surveillance video and a copy of his medical records. Defendant Dutcher allegedly became angry, saying that he did not have time for Plaintiff's complaints and that he had already spoken to the Captain. On August 20, 2010, Plaintiff received a hearing on the misconduct. The record consisted of Plaintiff's statement, a statement from the hearings investigator indicating that no surveillance tape existed, and a memorandum from Defendant Pope. Hearings Officer K. Talbot found that Plaintiff had admitted hearing the order. She further concluded that Plaintiff's statements about his inability to walk were self-serving, especially given that Plaintiff had admitted to playing basketball a few days earlier and admitted at the hearing that he had no problem walking. Plaintiff therefore was found guilty of the misconduct charge. (Att. B to Compl., Page ID#30.)

Plaintiff requested medical treatment for his injuries, in which he complained of severe pain in his lower back and his nose. He also complained that he had swelling on the left side of his throat. Plaintiff was called to health services on August 20, 2010, after he returned from his misconduct hearing. At that time, Plaintiff was asked about his back, nose and throat, but he received no other treatment.

On August 29, 2010, Plaintiff saw Defendant Warden Palmer in the law library. Plaintiff told Palmer that his cane had been wrongfully confiscated and that he had been assaulted by prison officers. Defendant asked Palmer what he wanted her to do about the matter. Plaintiff replied that he wanted the state police to be contacted. Palmer told Plaintiff to have his family call the state police and walked away.

Plaintiff submitted a notarized complaint to the Michigan State Police on August 24, 2010, seeking an investigation into the August 16 assault. On September 2, 2010, Plaintiff received a response from Defendant MSP Inspector Zarotney, informing Plaintiff that the state police would not criminally investigate the complaint unless the MDOC requested the MSP to do so. (Att. E to Compl., Page ID#58.) On September 7, 2010, Plaintiff sent another notarized complaint to Defendant Attorney General Cox. Plaintiff complained that he was being denied his right of access to the courts because the MSP declined to prosecute the charge. A respondent for Cox's office wrote Plaintiff to inform him that he had forwarded Plaintiff's letter to MDOC Director Patricia Caruso and advised Plaintiff that Cox could not give him legal advice. (Att. G to Compl., Page ID#67.) On October 12, 2010, Defendant Palmer responded to Plaintiff's complaint to the Attorney General. Palmer stated that her investigation had revealed that Defendant Sharp had examined Plaintiff on August 16, 2010; that Plaintiff had admitted that he had played full-court basketball before the assessment; that Thomsen had informed Plaintiff that health care had found Plaintiff able to walk; that Plaintiff had nevertheless refused to move from the chair and return to his housing unit; and that custody staff had then used reasonable force to restrain and escort Plaintiff to segregation. (Att. H to Compl., Page ID#69.)

On August 26, 2010, Plaintiff was again called to health services. At that time, Defendant Dr. Sharp indicated that he had had a chance to review Plaintiff's medical file and concluded that Plaintiff's cane should not have been taken away. Sharp therefore reordered the cane detail. Plaintiff requested new x-rays to document injuries from the assault. Defendant Sharp refused to order new x-rays.

Plaintiff makes a number of claims for relief: (1) that his cane was taken in violation of the Eighth Amendment and that he subsequently was denied adequate medical attention; (2) that Defendant custody officers used excessive force against him in violation of the Eighth Amendment; (3) that he was deprived of his constitutional right of access to the courts by Defendant Zarotney's failure to prosecute; (4) that he was charged and convicted of a fabricated misconduct in violation of his right to due process. He seeks unspecified injunctive relief, together with compensatory and punitive damages.

II.     Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the State of Michigan, the MDOC, the MDOC Bureau of Health Care Services, and the MSP. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC and its divisions are absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). Similarly, the MSP is a department of the State of Michigan entitled to sovereign immunity. *See Lavrack v. City of Oak Park*, No. 98-1142, 1999

WL 801562, at *2 (6th Cir. 1999). In addition, the State of Michigan (acting through any of its departments) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the State of Michigan, the MDOC, the MDOC Bureau of Health Care Services, and the MSP.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding

that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendants Assistant Deputy Warden Stewart, Warden Palmer, Attorney General Cox, and Deputy Director Straub other than his claim that they failed to properly supervise their employees or respond to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Stewart, Palmer, Cox and Straub engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Due Process: Misconduct Conviction

Plaintiff alleges that Defendant Thomsen filed a "fabricated" misconduct against him. He appears to assert that, because he could not physically comply with Thomsen's order, Thomsen violated the Due Process Clause by issuing a misconduct ticket charging him with failing to obey a direct order. Plaintiff also asserts that Defendant Hearing Investigator Dutcher inadequately investigated the major misconduct charge and failed to produce some of the materials requested by Plaintiff, including the surveillance video and Plaintiff's medical file.

Plaintiff's allegations against Thomsen do not implicate due process. Notwithstanding Plaintiff's language, he does not allege that he did not hear Thomsen's direct order or that Thomsen actually fabricated the conduct on which the misconduct ticket was based. Instead, he alleges that he had a recognized defense to the misconduct charge: he was physically unable to comply with the order. He therefore suggests that Thomsen could not lawfully charge him with failing to comply with the direct order. The Court is unaware of any authority for Plaintiff's assertion that the Due Process Clause protects a prisoner from being charged with any misconduct offense to which he may have a defense. Instead, the procedural due process rights of a prisoner subject to a disciplinary charge are limited to those set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours

prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. Because Plaintiff had no due process right not to be charged with a major misconduct, his claim against Thomsen is meritless.

Plaintiff next complains that Defendant Dutcher inadequately investigated the charge, depriving Plaintiff of the opportunity to present necessary evidence, including the surveillance video and Plaintiff's medical file. However, there is no due process requirement that a hearing investigator must conduct his investigation in a certain way. *See Falkiewicz,* 271 F. Supp. 2d at 948. Therefore, Petitioner fails to state a due process claim as to Defendant Dutcher for failure to investigate. Moreover, Defendant Dutcher was not the official charged with conducting or deciding the misconduct proceeding, and Plaintiff does not name as a Defendant the individual who was responsible for the inadequacy of his hearing.[1]

Further, Plaintiff's challenge to the adequacy of the misconduct proceeding fails to state a claim. Plaintiff suggests that his opportunity to present a defense was unfairly limited by the failure to produce surveillance videos and medical records. However, the right to call witnesses or present evidence in a misconduct hearing is not absolute. *Wolff*, 418 U.S. at 566. The United States Supreme Court explained:

---

[1] Even had Plaintiff named the hearing officer as a defendant, any claim for damages against the hearing officer would be barred by judicial immunity. The Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).

> [W]e must balance the inmate's interest[s] against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

*Id.*

In the instant case, Plaintiff's ability to present his defense was not unfairly limited. Contrary to Plaintiff's claim that Dutcher refused to investigate or to produce the surveillance video, Dutcher supplied the hearing officer with Plaintiff's statement and reported that no video evidence of the incident existed. Plaintiff makes no allegation that Dutcher falsely reported that the control center was not within the view of a video camera, and his attachments squarely indicate otherwise. As a result, Dutcher did not deprive Plaintiff of *available* video evidence. Further, Plaintiff's complete medical records were not necessary or relevant to the misconduct hearing. Regardless of Plaintiff's overall history of back problems, the only question in issue was whether those back problems prevented Plaintiff from complying with a direct order on August 16, 2010. Plaintiff admitted to the hearing officer that he heard the order. He further acknowledged that, because he had received a back injection, he had felt well enough to play basketball four days earlier. In addition, although Plaintiff disputes the reasonableness of Defendant Sharp's decision to remove his cane, Plaintiff does not dispute that he was seen in health services by a doctor who determine that, at that point in time, Plaintiff did not require the use of a cane to walk. Nothing about the larger medical record would have undermined that determination.

Finally, to the extent that Plaintiff argues that the hearing officer reached the wrong decision, his claim is without merit. The Due Process Clause does not guarantee that a required procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). "[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985)). The Supreme Court in *Hill* held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence", a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455). "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added). Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearings officer in the disciplinary proceeding. *Hill,* 472 U.S. at 456; *see also Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003), *aff'd*, 110 F. App'x 491 (6th Cir. 2004). A hearings officer in a prison disciplinary proceeding is not

required to find the prisoner guilty beyond a reasonable doubt, or find that guilty was the only reasonable interpretation of the evidence. *Thomas v. Marberry,* No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 4, 2007) (citing *Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)). Further, "this court will not interfere with the discretion of prison authorities to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz,* 271 F. Supp. 2d at 948 (citing *Turney v. Scroggy,* 831 F.2d 135, 139-40 (6th Cir. 1987)).

Here, ample evidence supported the hearing officer's determination. According to Thomsen's charge, which was supported by Defendant Pope's statement, Thomsen repeatedly ordered Plaintiff to get out of the wheelchair and head back to his unit. Plaintiff admitted that he heard the order and responded to it. He also admitted that he had played basketball a few days before the incident. The hearing officer reasonably concluded that his assertion that he could not walk four days after playing basketball was "preposterous." (Ex. B to Compl., Page ID#30.) Further, Plaintiff has at no time alleged that he made any effort to comply with the order. He does not contend that he could not get out of the chair, nor does he contend that he could not walk at all. The hearing officer's determination that Plaintiff "voluntarily failed to follow the order," *id.*, was supported by constitutionally sufficient evidence.

For all these reasons, Plaintiff's claims concerning his misconduct conviction fail to state a claim. Because Plaintiff alleges no other claim against Defendant Dutcher, the complaint against Dutcher will be dismissed.

### C. Failure to Prosecute

Plaintiff alleges that Defendant Police Inspector Zarotney failed to pursue criminal charges against the officers involved in the August 16, 2010 assault on Plaintiff. A private citizen

"lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). Simply put, Plaintiff cannot compel a criminal prosecution of Defendants because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004). As a consequence, Plaintiff fails to state a claim against Defendant Zarotney.

**D.     Eighth Amendment**

1.     Medical claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or

non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results

in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff complains that Defendant Dr. Sharp violated the Eighth Amendment by taking away his walking cane. As Plaintiff's allegations and attachments make clear, Plaintiff has for years received substantial medical treatment for his back injury, including pain medication and back injections, and he has been provided numerous accommodations for his condition. Plaintiff does not dispute that he played unrestricted basketball a few days before his cane was discontinued. Although he contends that he still needed his walking cane on August 16, 2010, a reasonable medical provider could have concluded that, if Plaintiff was able to play basketball without a cane, he did not require a cane to walk from one place to another at the prison. Plaintiff's claim that he was in excruciating pain at the time of the visit could reasonably have been found to be less than credible. Plaintiff's claims, therefore, amount to a simple disagreement with Sharp's medical treatment. At

best, Plaintiff's allegations about Defendant Sharp's decision support a claim of negligence. The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835; *see also Estelle*, 429 U.S. at 105-06 (recognizing that mere medical negligence does not implicate the Eighth Amendment). Given the extensive history of medical treatment and Plaintiff's undisputed activities, Defendant Sharp's decision to discontinue the cane accommodation clearly did not amount to deliberate indifference to a serious medical need.

Further, Plaintiff's subsequent medical care did not amount to deliberate indifference. Four days after the discontinuation of his cane accommodation, Plaintiff was seen in heath services on August 20, 2010, at which time his complaints about his back, nose and throat (the specific subjects of his medical kite) were evaluated. The Court notes that, in his medical kite, Plaintiff made no allegations about being assaulted. Instead, he simply listed his medical complaints. Although Plaintiff alleges that he was given no additional treatment at that time, he does not indicate what treatment he believes was medically indicated at that time. Indeed, Plaintiff makes no specific allegations about the nature of his injuries, beyond asserting that his back condition had been aggravated. Plaintiff does not contend that his pain medications were discontinued or that he required other treatment. On August 26, 2010, only ten days after Plaintiff's cane had been discontinued, Plaintiff was again seen by Defendant Dr. Sharp. At that time, having had the opportunity for a full file review, Dr. Sharp reinstated the cane accommodation. Plaintiff's course of treatment falls far short of the deliberate indifference prohibited by the Eighth Amendment.

2. Excessive force

Plaintiff alleges that Defendants Thomsen, Cassel, Jones, Baker and an unknown corrections officer used excessive force to remove him from the wheelchair and return him to his housing unit. The Court concludes that Plaintiff's allegations state a claim against these Defendants.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants State of Michigan, Michigan Department of Health Care Services, Michigan Department of Corrections, Michigan State Police, Dutcher, Stewart, Palmer, Zarotney, Cox, Straub and Sharp will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) for failure to state a claim and/or because they are immune. The Court will order the excessive-force claim served against Defendants Thomsen, Cassel, Jones and Baker.[2]

An Order consistent with this Opinion will be entered.

Dated:     February 25, 2011            /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE

---

[2] At this time, the Court lacks sufficient information to order service against the unknown corrections officer.