UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONELY DESHON CHAMBERS,

    Plaintiff,

Case No. 1:11-cv-24

Hon. Robert J. Jonker

v.

STATE OF MICHIGAN, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 15) and plaintiff's response to the motion, which he designated as "Plaintiff's motion for summary judgment in opposition to defendants' motion for summary judgment" (docket no. 18).

    **I.**    **Background**

Plaintiff filed a complaint naming 16 defendants. Compl. (docket no. 1). The court previously summarized plaintiff's allegations as follows:

> According to the complaint, Plaintiff experienced a serious back injury in 2001. Since that time, Plaintiff has received numerous special medical accommodations: pain medication three times daily; no repetitive bending; no lifting over ten pounds; light-duty work assignment; a walking cane; a hot water bottle; a urinal; bottom-bunk assignment; a ground-floor cell assignment; elevator access; placement near the dining hall; and early meals due to his cane detail. In July 2010, Plaintiff was erroneously assigned to work on a yard crew. Because of his medical condition, Plaintiff promptly was removed from the job assignment.
>
> On August 12, 2010, one of the yard officers called Health Services to report that he had seen Plaintiff playing basketball. Plaintiff was called to Health Services on August 16. Defendant Dr. Sharp told Plaintiff that his cane was being confiscated because he had been observed playing basketball. Plaintiff told Defendant Sharp that he was undergoing severe back pain and that he could barely move. He asked Dr.

Sharp to review his medical file, which would support the seriousness of Plaintiff's medical condition. Defendant Sharp told Plaintiff that custody had told him to confiscate the walking cane, "and that's that." (Compl., Page ID#8.) Plaintiff continued to contest the confiscation. Defendant Officer Pope left and returned with a wheelchair. He told Plaintiff to calm down and said that he would take Plaintiff over to the control center to talk to the shift commander. Pope pushed Plaintiff's wheelchair to the control center.

When Plaintiff reached the control center, he attempted to explain his medical condition and his need for a cane. Defendant Captain Thomsen told Plaintiff, "Get the f*** out that chair and go lock the f*** up now." (Compl., Page ID#9.) When Plaintiff continued to explain, Thomsen repeated that he had given Plaintiff a direct order to "go lock the f*** up now." (Id.) Plaintiff told Defendant Thomsen that he was in serious pain and could not walk all the way back to his cell block. Thomsen then nodded at Defendant Jones, who knocked Plaintiff out of his wheelchair and onto the floor. Defendant Baker and the unidentified corrections officer slammed Plaintiff into the control room counter while Defendant Jones placed handcuffs on Plaintiff's wrists. Defendants Thomsen and Cassel allegedly stood on the other side of the control-room counter, laughing. Defendant Jones and the unidentified officer picked Plaintiff up off the floor, and Defendant Jones placed Plaintiff in a choke hold. Still laughing, Cassel stated, "Pressure points work[] wonders." (Id., Page ID#10.) Defendant Jones pushed Plaintiff's nose into his head and then threw him again to the floor. Defendants Jones, Baker and the unidentified officer then carried Plaintiff to segregation. Plaintiff was thrown to the floor of the segregation shower cell, kicked in the buttocks, and left in handcuffs, face-down on the floor, for three hours.

Plaintiff alleges that Defendant Thomsen filed a major misconduct ticket for disobeying a direct order. Plaintiff admits that he heard the order. Despite the admission, Plaintiff contends that the misconduct was fabricated, apparently because Plaintiff was physically unable to obey. Defendant Dutcher investigated the grievance that same day. Plaintiff requested a full investigation, including the surveillance video and a copy of his medical records. Defendant Dutcher allegedly became angry, saying that he did not have time for Plaintiff's complaints and that he had already spoken to the Captain. On August 20, 2010, Plaintiff received a hearing on the misconduct. The record consisted of Plaintiff's statement, a statement from the hearings investigator indicating that no surveillance tape existed, and a memorandum from Defendant Pope. Hearings Officer K. Talbot found that Plaintiff had admitted hearing the order. She further concluded that Plaintiff's statements about his inability to walk were self-serving, especially given that Plaintiff had admitted to playing basketball a few days earlier and admitted at the hearing that he had no problem walking. Plaintiff therefore was found guilty of the misconduct charge. (Att. B to Compl., Page ID#30.)

Plaintiff requested medical treatment for his injuries, in which he complained of severe pain in his lower back and his nose. He also complained that he had swelling on the left side of his throat. Plaintiff was called to health services on August 20, 2010, after he returned from his misconduct hearing. At that time, Plaintiff was asked about his back, nose and throat, but he received no other treatment.

On August 29, 2010, Plaintiff saw Defendant Warden Palmer in the law library. Plaintiff told Palmer that his cane had been wrongfully confiscated and that he had been assaulted by prison officers. Defendant asked Palmer what he wanted her to do about the matter. Plaintiff replied that he wanted the state police to be contacted. Palmer told Plaintiff to have his family call the state police and walked away.

Plaintiff submitted a notarized complaint to the Michigan State Police on August 24, 2010, seeking an investigation into the August 16 assault. On September 2, 2010, Plaintiff received a response from Defendant MSP Inspector Zarotney, informing Plaintiff that the state police would not criminally investigate the complaint unless the MDOC requested the MSP to do so. (Att. E to Compl., Page ID#58.) On September 7, 2010, Plaintiff sent another notarized complaint to Defendant Attorney General Cox. Plaintiff complained that he was being denied his right of access to the courts because the MSP declined to prosecute the charge. A respondent for Cox's office wrote Plaintiff to inform him that he had forwarded Plaintiff's letter to MDOC Director Patricia Caruso and advised Plaintiff that Cox could not give him legal advice. (Att. G to Compl., Page ID#67.) On October 12, 2010, Defendant Palmer responded to Plaintiff's complaint to the Attorney General. Palmer stated that her investigation had revealed that Defendant Sharp had examined Plaintiff on August 16, 2010; that Plaintiff had admitted that he had played full-court basketball before the assessment; that Thomsen had informed Plaintiff that health care had found Plaintiff able to walk; that Plaintiff had nevertheless refused to move from the chair and return to his housing unit; and that custody staff had then used reasonable force to restrain and escort Plaintiff to segregation. (Att. H to Compl., Page ID#69.)

On August 26, 2010, Plaintiff was again called to health services. At that time, Defendant Dr. Sharp indicated that he had had a chance to review Plaintiff's medical file and concluded that Plaintiff's cane should not have been taken away. Sharp therefore reordered the cane detail. Plaintiff requested new x-rays to document injuries from the assault. Defendant Sharp refused to order new x-rays.

Plaintiff makes a number of claims for relief: (1) that his cane was taken in violation of the Eighth Amendment and that he subsequently was denied adequate medical attention; (2) that Defendant custody officers used excessive force against him in violation of the Eighth Amendment; (3) that he was deprived of his

3

    constitutional right of access to the courts by Defendant Zarotney's failure to prosecute; (4) that he was charged and convicted of a fabricated misconduct in violation of his right to due process. He seeks unspecified injunctive relief, together with compensatory and punitive damages.

Opinion at pp. 2-6.

On initial screening pursuant to the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321(1996), the court dismissed all defendants except the following employees at the Michigan Reformatory (RMI): Captain T. Thomsen; Lieutenant D. Cassel; Corrections Officer (CO) T. Jones; and CO T. Baker. *See* Opinion and Order (docket nos. 6 and 7). One defendant, listed in the complaint as CO John Doe, has neither been identified nor served. Pending before the court are plaintiff's allegations that defendants Thomsen, Cassel, Jones, Baker and Doe violated his Eighth Amendment rights by using excessive force.

    **II.**    **Defendants' motion for summary judgment**

    **A.**    **Legal Standard**

Defendants have moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

4

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S.

at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not

receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff failed to properly exhaust a grievance to Step III

#### a. Plaintiff's grievance

In an affidavit filed in support of defendants' motion, Richard D. Russell, the MDOC's Manager of the Grievance Section stated that he has searched the MDOC's database and found that plaintiff had not filed a grievance to Step III since April 10, 2009. Richard D. Russell Affidavit at ¶¶ 1, 17-18 (docket no. 16-2). This record establishes that plaintiff did not properly exhaust a grievance related to the present action, which occurred more than one year later in August 2010.

In response to defendants' motion, plaintiff has identified a grievance, RMI-2010-08-1088-26a ("1088"), in which he alleged that Captain Thomsen "no[d]ded to an officer" who knocked plaintiff out of his wheelchair, hand cuffed him, placed him in a choke hold and pushed his nose. *See* Grievance 1088 (docket no. 19-2 at p. 4). Then, plaintiff stated that he was "assaulted a second time by prison officials." *Id.* Plaintiff submitted grievance 1088 on or about August 17, 2010, and apparently takes the position that he properly exhausted this grievance against the remaining defendants.

On August 21, 2010, plaintiff submitted a complaint to the Michigan State Police requesting an investigation of the alleged use of excessive force. Plaintiff's Declaration in opposition to defendants' motion at ¶ 8 (docket no. 19).

7

The MDOC received grievance 1088 on August 31, 2010, and advised plaintiff that he should receive a response by September 21, 2010. Grievance Receipt (docket no. 19-2 at p. 5).

The MDOC extended the time for filing a Step I response to grievance 1088 to October 12, 2010. *See* First Step Grievance Receipt (Sept. 1, 2010) (docket no. 19-2 at p. 5); Grievance Investigation Delay Letter (docket no. 19-2 at p. 6).

On September 7, 2010, plaintiff submitted a complaint to the Michigan Attorney General's Office requesting an investigation of the alleged use of excessive force. *Id.* at ¶ 9.

In a letter dated September 17, 2010, James E. Long, Division Chief of the Corrections Division at the Michigan Attorney General's Office, advised plaintiff that he was unable to advise plaintiff regarding his treatment by MDOC staff. Long Letter (docket no. 19-3 at p. 2). A copy of this letter was sent to MDOC Director Patricia Caruso. *Id.*

On October 12, 2010, Warden Palmer issued a Memorandum to plaintiff regarding the alleged assault. *See* Palmer Memorandum (docket no. 19-3 at p. 7). This Memorandum was in response to correspondence which the MDOC received from Mr. Long. *Id.* The Warden's memorandum provided in pertinent part as follows:

> On August 16, 2010, Dr. Sharp evaluated you and discontinued your cane detail. In addition, you admitted to playing full court basketball prior to the assessment by Dr. Sharp. You became argumentative due to Dr. Sharp removing your cane detail and refused to get out of the chair. You willingly moved to a wheelchair and were brought to control center to discuss your issue with Captain Thomsen.
>
> Captain Thomsen informed you health care determined there was no medical need for a cane and found you able to walk. You then refused to stand up and remove yourself from the wheelchair. Captain Thomsen gave you a direct order to return to your housing unit. You still refused to move from the wheelchair. At this point, custody staff used reasonable force to restrain and escort you to temporary segregation.

> Your allegations have been fully investigated and there is no evidence to substantiate your claim of being assaulted by staff.

*Id.*

Plaintiff has provided a copy of a kite, dated October 29, 2010, in which plaintiff stated, "Because I have not received a response for the said grievance [1088], I now request to be submitted with [sic] the step two grievance." *See* Kite (docket no. 19-4 at p. 2). On that same date, plaintiff stated that he filed a Step I grievance with the Prison Inspector's Office complaining that he was prevented from pursuing the grievance process. *See* Plaintiff's Declaration at ¶ 10 (docket no. 19); Grievance (dated October 29, 2010) (unnumbered with no record of receipt by MDOC) (docket no. 19-4 at p. 3).

        **b.**        **Lieutenant Cassel, CO Jones and CO Baker**

As an initial matter, while grievance 1088 named Captain Thomsen, it did not name Lieutenant Cassel, CO Jones and CO Baker. Rather, plaintiff's grievance simply referred to the other individuals involved in the alleged use of excessive force as "officer" or "prison officials." In short, plaintiff failed to name these MDOC employees in his grievance as required by Policy Directive 03.02.130 ¶ R. Viewing the evidence in the light most favorable to plaintiff, the record reflects that he failed to properly exhaust a grievance against defendants Cassel, Jones and Baker. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, these defendants are entitled to summary judgment on grounds of lack of exhaustion.

        **c.**        **Captain Thomsen**

Whether plaintiff properly exhausted his grievance against Captain Thomsen is somewhat more complicated. Plaintiff has failed to rebut or contradict Manager Russell's sworn statement that he failed to exhaust grievance 1088 through Step III. However, an issue before the

court is whether plaintiff was prevented from properly exhausting the grievance by the MDOC's actions. Neither party has produced a document explicitly identified as a Step I response to the grievance. Warden Palmer's October 12, 2010 memorandum was filed within the MDOC's deadline for responding to grievance 1088 and appears to address the gist of that grievance, i.e., the alleged use of excessive force by Thomsen. If Warden Palmer's memorandum is viewed as the MDOC's Step I response, then there is no evidence that plaintiff filed a timely Step II appeal to that response. However, Warden Palmer's memorandum was not designated as a Step I response; rather, on its face, the memorandum responded to an inquiry made by the Michigan Attorney General's Office. The record reflects that plaintiff, with some justification, did not view the memorandum as the Step I response. Viewing the evidence in the light most favorable to plaintiff, the court concludes that the memorandum was not a Step I response.

Assuming that the MDOC did not provide a Step I response on the extension due date of October 12, 2010, then plaintiff was required to file a Step II grievance within ten business days. Policy Directive 03.02.130 ¶ BB provides in pertinent part that:

> A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response. To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or , if no response was received, within ten business days after the date the response was due, including any extensions.

Policy Directive 3.02.130 ¶ BB.

In this case, plaintiff should have filed his Step II grievance by no later than Tuesday, October 26, 2010. However, the record reflects that plaintiff did not send his kite until Friday, October 29, 2010. In addition, the kite was not presented on a Step II grievance form, and appears

10

to be a request for a Step II grievance form rather than a Step II grievance. Even if the court assumed that the kite was an attempt to file a Step II grievance, it was three days late. Plaintiff has presented no evidence that he was prevented from appealing the grievance through Steps II and III.

In order to properly exhaust administrative remedies, a prisoner must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Viewing the evidence in the light most favorable to plaintiff, the court concludes that plaintiff failed to properly exhaust grievance 1088 against Captain Thomsen or any other defendant. Accordingly, Captain Thomsen, Lieutenant Cassel, CO Jones and CO Baker are entitled to summary judgment for lack of exhaustion..

### C. The unserved John Doe defendant

Finally, plaintiff has alleged that CO John Doe participated in the alleged use of excessive force on August 16, 2010, by slamming plaintiff's throat into the control center counter and placing plaintiff in a choke hold. Compl. at pp. 8-10. Defendant Doe has been neither identified by plaintiff nor served with a summons in this action. Nevertheless, the court should enter summary judgment in favor of this unserved defendant based upon the record.

"Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) [p]laintiff has been provided an opportunity to address the controlling issues." *Moore v. Thomas*, 653 F.Supp.2d 984, 1003 (N.D. Cal. 2009). "[N]o principle forbids a court to notice that [] a defense exists, is bound to be raised, and is certain to succeed when raised." *Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir.1994). *See Laubach v. Scibana*, No. CIV-05-1294-F, 2008 WL 281545 at *12 (W.D. Okla. Jan. 31, 2008) (meritorious affirmative defenses asserted by

11

defendants were "equally applicable to the claims against the unresponsive and unserved defendants" and formed the basis to dismiss the unserved defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Blake v. McCormick*, No. 5:06-cv-273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007) (a successful affirmative defense of lack of exhaustion raised by defendants served in a prisoner civil rights case "inures to the benefit of any unserved or defaulting defendants"); *Day v. Office of Cook County Sheriff*, No. 2000 C 2529, 2001 WL 561362 at *3 (N.D. Ill. May 21, 2001) (defendant's meritorious defense of qualified immunity applied to other "yet-unserved defendants" who could raise the same defense). *Cf. Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[s]everal courts have held that where 'a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant'") ( quoting *United States v. Peerless Insurance Company*, 374 F.2d 942, 945 (4th Cir. 1967). Here, plaintiff named only Captain Thomsen in the grievance and then did not properly exhaust the grievance through Step III. For this reason, Captain Thomsen, Lieutenant Cassel, CO Jones and CO Baker are entitled to summary judgment for lack of exhaustion. Even if plaintiff identified CO John Doe at a later date, the defense of lack of exhaustion inures to the benefit of this unserved defendant, who allegedly took part in the same incident as Captain Thomsen, Lieutenant Cassel, CO Jones and CO Baker. Accordingly, the court should grant summary judgment in favor of CO John Doe.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Captain Thomsen, Lieutenant Cassel, CO Jones and CO Baker (docket no. 15) be **GRANTED** for failure to exhaust administrative remedies.

I further recommend that the unserved defendant, CO John Doe, be **GRANTED** summary judgment on the same grounds as defendants Thomsen, Cassel, Jones and Baker.

I further recommend that plaintiff's motion for summary judgment (docket no. 18) be **DENIED**.

I further recommend that this action be **DISMISSED**.


Dated: January 12, 2012     /s/ Hugh W. Brenneman, Jr.
                            HUGH W. BRENNEMAN, JR.
                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).